UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS BURKE, RICHARD DANITZ,
ROBERT J. KULCZYK, JAMES M. KILGER,
BRUCE HOFFMAN, GEORGE FERRARO,
JAMES BIDDLE, SR. JOHN O'HARE, JR., JIM
LOGAN, JOHN SIMMONS, as TRUSTEES on
behalf of the Buffalo Carpenters Pension Fund,
and the BUFFALO CARPENTERS PENSION
FUND,

                         Plaintiffs,
  v.                                                          **DECISION AND ORDER**
                                                                   09-CV-648S
EATON ASSOCIATES, INC.,

                         Defendant.
_____

## I.  INTRODUCTION

Plaintiffs in this action are trustees and sponsors of the multiemployer Buffalo Carpenters Pension Fund (the "Fund"). Plaintiffs commenced this action pursuant to the Employee Retirement Income Security Act of 1974, as amended by the Multi-Employer Pension Plan Amendment Act of 1980 ("ERISA"), 29 U.S.C. §§ 1001 *et. seq*., to recover ERISA withdrawal liability payments owed by Defendant Eaton Associates, Inc. ("Eaton"), in accordance with a termination agreement.  Presently before this Court is Plaintiff's second motion for summary judgment.  For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that the motion should be granted with respect to the 2002, 2003, 2006, and 2008 arrears plus associated interest, fees, and costs.

1

## II. BACKGROUND

Eaton, as an employer, was a contributing member to the Fund in late 2001 when the Fund was terminated. At that time, Eaton, along with other former contributing members, entered into an agreement with the Fund, entitled "Term Sheet," which set forth the terms for Eaton's payment of its withdrawal liability associated with the termination.[1] (Att'y Decl. of Jonathan Johnsen, Esq., ¶¶ 6-9, Ex. D, Docket No. 18.) The Term Sheet limits Eaton's withdrawal liability as follows:

> E. Beginning with the month after the Agreed Mass Withdrawal and with respect to each month thereafter for 180 months, [Eaton] shall pay to the Fund the greater of:
>
> > (1) an amount equal to the product of (a) $3.10 . . . multiplied by (b) each hour worked during the particular month by its employees within the craft and area jurisdiction of the collective bargaining agreement in effect as of the day of the Agreed Mass Withdrawal; and
> >
> > (2) an amount equal to the quotient obtained when (a) sixty percent (60%) of the average yearly contribution paid by [Eaton] in the lowest three consecutive years in the ten (10) plan years preceding the day of the agreed mass withdrawal (b) is divided by twelve (12) ("Minimum Payment Obligation").

(Id.; see Eaton Affidavit, Ex. A.) Eaton's sole shareholder, director, and officer Clarke E. Eaton, Jr., averred that "[t]he Fund and the employer parties to the Term Sheet later agreed that the payment obligations contained in paragraph (E) would be paid and discharged on an annual (rather than monthly) basis." (Aff. of Clarke E. Eaton, Jr. ¶ 12, Ex. A, Docket No. 21; see Att'y Decl. of Jonathan Johnsen, Esq. ¶¶ 14-15, Docket No. 30.) As calculated by the Fund, Eaton's minimum annual obligation pursuant to the Term Sheet

---

[1] An employer is obligated to contribute to a multiemployer pension plan its proportionate share of the plan's unfunded vested benefits upon withdrawal from the plan. Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 261 (2d Cir. 1990) (citing 29 U.S.C. § 1381(a)).

was $30,625.64, which could be reduced to zero if, for example, Eaton made contributions to the Fund based on a total of 10,000 hours of carpenter work in the area. (Johnsen Decl., ¶¶ 7, 9, 11-13, Ex. K, Docket No. 18.)

The Term Sheet also provides that Eaton would become liable for the entire amount of its withdrawal liability in the event it defaults on an agreed-upon payment:

> N.  For purposes of this Term Sheet, "default" means the failure of [Eaton] to make, when due, any payment under this Term Sheet, if the failure is not cured within 60 days after [Eaton] receives written notification from the Fund of such failure, and any other event defined in rules adopted by the Fund which indicates a substantial likelihood that an employer will be unable to pay its liability under this Term Sheet. An Undersigned Employer[, such as Eaton,] that defaults on its obligations under these Term Sheet is liable for the amount of mass withdrawal liability it would have incurred under sections 4211 and 4219(c)(1)(D) of ERISA, determined as of the Mass Withdrawal Date.  Such an employer shall be required to make quarterly payments beginning within 60 days after the date of default on the schedule and in the amount determined under section 4219 (c)(1)(C)(i) of ERISA as of the Mass Withdrawal Date, with no credit for payments made under this Term Sheet prior to the default or debit for payments not made on the statutory schedule prior to the default.

(See Eaton Aff., Ex. A; Johnsen Decl., ¶¶ 8,9, Ex. D, Docket No. 18.)  Plaintiffs assert that Eaton's entire withdrawal liability is $677,777, payable in installments with interest, for an ultimate total of $870,673 upon default. (Johnsen Decl., ¶ 14, Ex. F, Docket No. 18; Johnsen Decl. ¶¶ 29-30, Docket No. 30.)

The Fund first invoiced Eaton pursuant to the Term Sheet on or about November 20, 2003, seeking $30,625.64 for Eaton's 2002 minimum obligation. (Johnsen Decl., ¶ 16, Ex.G, Docket No. 18; Johnsen Reply Decl. Ex. B, Docket No. 33.)  In September 2004, Eaton was invoiced in the same amount for its 2003 minimum obligation. (Johnsen Reply Decl. Ex. C, Docket No. 33.)   When Eaton failed to pay those invoices, the Fund sent notices stating that:

3

> On behalf of the Fund, we demand immediate payment of all amounts due and owing as stated above and hereby give notice that if such payment is not forwarded to us or the Fund within 60 days of the date of the receipt of this letter, the Fund will consider that Eaton Associates is in default pursuant to Paragraph N of the Term Sheet and assess and collect withdrawal liability as provided for in such section.

(Johnsen Decl. Ex. G, Docket No. 18.) The letters apparently prompted Eaton to request settlement discussions. (Johnsen Decl. ¶ 17, Docket No. 18.) While these discussions were ongoing, the Fund sent Eaton an invoice for the amount owed for 2006. (Id. ¶ 18, Ex. H.) Eaton again failed to pay, and another notice of default was sent in October 2007. (Id.)

The settlement discussions resulted in an offer by Eaton in February 2008 to pay $500 per month on the past due amounts, to which the Fund's attorney countered with $1014.06 per month, an amount he believed the Fund "would be willing to accept," with payments to begin on March 1, 2008. (Johnsen Decl. ¶ 19, Ex. I, Docket No. 18.) Counsel stated in the counteroffer that, should Eaton find this arrangement acceptable, counsel would "get approval from the trustees and draft a settlement agreement." (Id.) The Fund received a check from Eaton in March 2008 in the amount of $1,014.00. (Id. Ex. J.) Eaton, however, refused to sign a settlement agreement formalizing the arrangement based on the counteroffer. (Id. ¶ 21.)  According to Plaintiffs, Eaton again failed to pay the $30,625.64 owed for 2008, a fact not disputed by Eaton. (Johnsen Decl. ¶ 22, Docket No. 18.)

Plaintiffs commenced the instant action in July 2009 pursuant to ERISA "to collect from [Eaton] withdrawal liability owed by [Eaton] to the Fund." (Compl. ¶ 1.) Plaintiffs alleged in the complaint that Eaton owed $16,224 for 16 missed settlement payments and $30,625.64 for its 2008 minimum obligation under the Term Sheet. (Id. ¶¶ 12-13.)

Thereafter, Plaintiffs moved for summary judgment, arguing in the alternative that if this Court did not find the settlement agreement valid, then Plaintiffs were entitled to a judgment for $121,432.16 plus statutory interest and penalties for Eaton's 2002, 2003, 2006, and 2008 withdrawal liability payments due pursuant to the Term Sheet. (Johnsen Decl. ¶ 42, Docket No. 18.)  Eaton cross-moved for summary judgment, arguing that pursuant to the Term Sheet, its yearly minimum obligation was zero. (Docket No. 20; Def's Mem. of Law at 6-7, Docket No. 23.)   In the resulting Decision and Order, this Court determined that Eaton's March 2008 check did not constitute acceptance of the settlement counteroffer because the Fund's counsel expressly conditioned that offer on the signing of a formal agreement. (Docket No. 28 at 7.)  The Court also rejected Eaton's argument that it could calculate its minimum payment obligation, which is "the average yearly contribution paid by [Eaton] in the lowest three consecutive years in the ten (10) plan years," based on those years it made no contribution to the Fund. (Id. at 2, 10.) The Court did agree with Eaton, however, that "insofar as Plaintiffs assert a claim arising earlier than July 17, 2003, it is dismissed as time barred." (Id. at 11.)  Eaton's summary judgment motion was therefore denied, and Plaintiffs' motion for summary judgment "was granted in all respects save their claim for payment due before the statute of limitations expired." (Id. at 11.)  The parties were "encouraged to reach an agreement concerning Eaton's liability," but if an agreement could not be reached, Plaintiffs were "directed to file a motion detailing its award request, thereby allowing Eaton to respond to this request, which it ha[d] not yet had an opportunity to do." (Id.)

Plaintiffs thereafter requested that Eaton pay $137,822.85, "the current amount owed . . . pursuant to the Term Sheet." (Johnsen Decl. ¶ 7, Docket No. 30; see Decl. of

David L. Roach, Esq. ¶ 5, Docket No. 32.) Eaton objected to the inclusion of any liability for periods before July 17, 2003 in light of the Court's prior order. (Roach Decl. ¶¶ 6-7, Ex. A, Docket No. 32.) Plaintiffs explained in response that withdrawal liability under the Term Sheet was calculated and billed as follows:

> After the end of the calendar year for which liability is being collected, and after all contributions for that year have been collected, the Fund determines whether or not a company has made their minimum annual contribution. If the minimum amount is met through contributions (the $3.10 per hour amount), then nothing is owing. If the minimum amount is not met then the amount of contributions made is subtracted from the minimum amount and an invoice is sent to the company.

(Id. ¶¶ 6-7, Ex. B.) Plaintiff's counsel asserted that the claims for 2002 and 2003 did not arise until after July 2003, when Eaton's minimum contributions were calculated and invoiced for those years. (Id.)

As a result of these discussions, no agreement was reached. Plaintiffs now bring the present motion[2] seeking summary judgment on the amount of damages. (Docket No. 30.)

### III.  DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec.

---

[2]In support of their motion, Plaintiffs submitted the Attorney Declaration of Jonathan Johnsen, Esq., with Exhibits A-E (Docket No. 30). Eaton opposed the motion with the Attorney Declaration of David L. Roach, Esq., with Exhibits A-E, (Docket No. 32), and Plaintiffs filed the Reply Attorney Declaration of Johnsen with Exhibits A-D (Docket No. 33). Following an order from this Court, the parties each submitted a Memorandum of Law (Docket Nos. 35 (Plaintiffs), 36 (Eaton)). The parties have also referenced, and this Court has considered, the submissions in support and opposition to the first summary judgment motion and cross-motion (Docket Nos. 18, 20).

Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Plaintiff commenced this action seeking to enforce Eaton's obligation to make payments toward its ERISA withdrawal liability. "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. "ERISA imposes upon employers who promise to contribute to an employee pension plan, a federal obligation to make those contributions. It thereby offers federal court remedies, along with court costs, attorney's fees, and liquidated damages or interest, to those who seek to collect delinquent contributions." Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 23-24 (1st Cir. 1988)(emphasis removed)(citing 29 U.S.C. § 1132(g)(2)). "A multiemployer plan may adopt rules providing for other terms and conditions for the satisfaction of an employer's withdrawal liability if such rules are consistent with this chapter and with such regulations as may be prescribed by the corporation." 29 U.S.C. § 1404.  Here, the Term Sheet provides those terms and conditions.

In their original motion for summary judgment, Plaintiffs sought the missed settlement payments and 2008 arrears or, alternatively, the 2002, 2003, 2006, and 2008 withdrawal liability payments due pursuant to the Term Sheet.  In their present application for damages, however, Plaintiffs assert that Eaton is in default under paragraph N of the

7

Term Sheet and argue for the first time in this litigation that they are entitled to a judgment in the amount of Eaton's entire withdrawal liability, totaling $870,673 plus statutory interest and fees. (Johnsen Decl. ¶¶ 28-32, Docket No. 30.) Eaton responds that it is liable for only those unpaid amounts under the Term Sheet, calculated monthly, that became due after July 17, 2003, totaling a principal amount of $43,550.77. (Roach Decl. ¶¶ 11-12, 19-20, Ex. A, Docket No. 32; Def.'s Mem. of Law at 3-4, Docket No. 36.)

**A.     Default Claim**

Initially, there is no question that Paragraph N expressly provides that the Fund may impose the full amount of Eaton's withdrawal liability, without any reduction for amounts already paid, upon its finding that Eaton failed to make a scheduled payment pursuant to the Term Sheet.  This fact alone is not dispositive of the instant motion, inasmuch as there is also no question that Plaintiffs have not, *in fact*, assessed any liability against Eaton pursuant to Paragraph N.  Eaton was placed on notice several times of a possibility of default if payments were not made in 60 days, but because of settlement discussions, Plaintiffs never invoiced Eaton for the full amount of withdrawal liability in accordance with the Term Sheet.  Indeed, even after Eaton refused to sign the settlement agreement and stopped making payments in April 2008, Plaintiffs did not invoke the default remedy in the Term Sheet, but instead commenced this action over a year later seeking either enforcement of the settlement agreement or past due payments.  Plaintiff's counsel also concedes that the default payment is being sought for the first time in this second summary judgment motion "[b]ecause of the rulings by the Court" in the prior Decision and Order. (Johnsen Reply Decl. ¶ 18, Docket No. 33.)  In other words, although Plaintiffs could have

invoked the default remedy in the Term Sheet, they elected instead to move forward as if the Term Sheet was still in effect. See Bigda v. Fischbach Corp., 898 F.Supp. 1004, 1011-1012 (S.D.N.Y.,1995), *affd* 101 F.3d 108 (2nd Cir. 1996) (where a party elects to continue a contract rather than terminate and recover under a liquidated damages provision, the party waives the right to terminate based on that particular breach).  Indeed, Plaintiffs recognize that the Term Sheet has not been terminated by noting that Eaton "also owes $16,390.69 for calendar year 2009, which amount came due after the filing of this lawsuit." (Pls.' Mem. of Law at 3 n.1, Docket No. 35.)

The failure of Plaintiffs to have specifically invoked this remedy is also significant because, under ERISA, the amount of an award of interest or liquidated damages pursuant to § 1132 (g) is predicated upon the amount of unpaid contributions *at the time the suit is filed*. Iron Workers Dist. Council of W. New York v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2d Cir. 1995); Huff v. Cruz Contracting Corp., 643 F.Supp.2d 344, 349 -350 (S.D.N.Y. 2009)(collecting cases).  Here, because Plaintiffs did not expressly demand payment pursuant to Paragraph N prior to the second summary judgment motion, Eaton could not have been delinquent on any such payment at the commencement of this action.  Further, Plaintiffs are requesting that they be granted a judgment for the *full* amount of the withdrawal liability, $870,673, plus statutory fees and interest based on that amount.  (Johnsen Decl. ¶ 29 Ex. B, Docket No. 30.)  Paragraph N, however, requires a defaulting employer "to make quarterly payments beginning with 60 days *after the date of default* on the schedule and in the amount determined under section 4219(c)(1)(C)(i) of ERISA as of the Mass Withdrawal Date." (Eaton Aff., Ex. A (emphasis added); Johnsen Decl. Ex. D, Docket No. 18.)  Thus, even if Plaintiffs had invoked the

default option on December 3, 2007– a fact not established by this record – less than $200,000 would have come due prior to the commencement of the lawsuit, and only about $400,000 would have been due as of this year. (Johnsen Decl. ¶ 30, Ex. B, Docket No. 30.) Thus, there is no basis in this record for Plaintiff's requested "finding that Eaton defaulted under the Term Sheet and, therefore, is responsible for the entire amount of the original withdrawal liability." (Docket No. 33 ¶ 20.)

This Court also notes that the Term Sheet did not place Eaton on notice of the exact amount of its full withdrawal liability, but instead provides that the amount will be calculated pursuant to section 4219(c)(1)(C)(i) of ERISA. (Johnsen Decl. Ex. D; Eaton Aff. Ex. A). There is no indication in this record that the Employer Withdrawal Liability Calculation prepared by Plaintiffs was ever presented to Eaton prior to this litigation. (Johnsen Decl. Ex. F, Docket No. 18.) Notably, in addition to the obligations it places on employers such as Eaton, ERISA also provides the right to request a review of a withdrawal liability determination by a plan sponsor (see 29 U.S.C. § 1399 (b)(2)(A)) and to arbitrate any dispute regarding that determination, (see § 1401 (a)(1)). In the absence of any indication in the record that Eaton waived these rights, Plaintiffs' request for the full withdrawal liability amount must be denied.

In so concluding, this Court notes that, because the obligations of the Term Sheet remain in effect, Plaintiffs could still invoke the default clause upon Eaton's subsequent failure to make a scheduled payment. Thus, the delay in invoking the Term Sheet's default provision could result in a windfall for Plaintiffs: a judgment for the 2002-2008 arrears with ERISA-required fees and interest as well as a possible subsequent award, again with statutory fees and interest, based on the full amount of the withdrawal liability. Because

10

this has not yet happened, this Court need not, and thus will not, consider whether or not Plaintiffs' potential ability "[t]o recover liquidated damages outside of and in addition to the statutory framework of section 502(g) with its 20% limitation" renders that provision unenforceable. Michigan Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 389 (6th Cir. 1991), *cert denied* 502 US 982 (1991)("as to liquidated damage assessments which are keyed to these 'unpaid contributions,' the remedy offered by section 1132(g) is exclusive"); see 29 U.S.C. § 1132(g)(2)(C)(ii)(permitting "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions); Int'l Brotherhood of Elec. Workers Health Fund v. Zacher, 771 F.Supp. 1323, 1331-32 (W.D.N.Y. 1991)(Section 502(g), or 29 U.S.C. § 1132 (g), "is the exclusive scheme to recover liquidated damages for unpaid contributions to employee pension and welfare trust funds governed by ERISA").

**B.     Statute of Limitations**

Plaintiffs argue in the alternative that Eaton is liable for those unpaid amounts invoiced under the Term Sheet for 2002 through 2008, for a total of $121,432 plus statutorily imposed interest and fees. Eaton argues that its liability is limited by the Court's prior ruling that all claims arising earlier than July 17, 2003, are time barred. Dispositive of this issue is when the claims for the 2002 and 2003 minimum obligation payments arose.

"A plan cannot maintain an action until the employer misses a scheduled withdrawal liability payment. The statute of limitation does not begin to run until that time." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 200-

201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997). Eaton argues in its current submissions that the Term Sheet obligates monthly payments. (Def's Mem of Law in Opp'n at 2-3, Docket No. 36.) In response to Plaintiffs' initial motion for summary judgment, however, Clarke E. Eaton, Jr., averred that the parties "later agreed that the payment obligations contained in paragraph (E) would be paid and discharged on an annual (rather than monthly) basis," and submitted a letter agreement memorializing that understanding. (Eaton, Jr., Aff. ¶ 12, Ex. A at 13-14, Docket No. 24.) Eaton does not dispute that Plaintiffs first invoiced Eaton for its 2002 obligations in the amount of $30,625.64 in November 2003. (Johnsen Reply Decl., ¶ 29, Ex. B, Docket No. 33.) Thus, all claims for the failure to pay arose after July 17, 2003, and Plaintiffs' claim for the 2002 amount is not time barred.

**C.    Amount of Damages**

As a result of a successful action to enforce Eaton's obligation to make its agreed-upon withdrawal liability payments, Plaintiffs are entitled to:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of --

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132 (g)(2).

Initially, the Court agrees with Plaintiffs' calculation of the total unpaid Term Sheet obligations from 2002 to 2008, $121,432.16. (Johnsen Decl. ¶¶ 28-29, 32, Docket No. 18; Johnsen Reply Decl. Ex. A, Docket No. 33.)[3] Eaton notably raises no objections with respect to Plaintiffs' method of calculating interest, fees, and costs. This Court has reviewed Plaintiffs' calculations nonetheless, and with a few exceptions, agrees with the results.  With respect to Plaintiffs' calculation of interest pursuant to 29 C.F.R. § 4219.32 and the annual rates as published by the Pension Benefit Guarantee Corporation, there are two time periods for which Plaintiffs have double-billed interest, and one erroneous interest rate cited.[4]  (Johnsen Decl. ¶¶ 28-29, Docket 18-1; see Pls.' Mem. of Law at 7-8, Docket No. 35.)  Reducing the requested amount of interest for these mistakes, Plaintiffs are entitled to interest in the total amount of $25,618.45.  Further, pursuant to 29 U.S.C. § 1132 (g)(2)(C)(i), Plaintiffs receive the same amount again as a form of liquidated damages.

The Court has also reviewed the reasonableness of Plaintiffs' requested attorneys' fees.  Although some of the entries in Plaintiffs' supporting documentation are vague, the Court finds the requested amount of $9,975.20 reasonable in light of number of hours billed for litigation that included mediation, two summary judgment motions, and at least

---

[3] Eaton owes the following amount for those years, after reductions for contributions and partial payments: $29,611.64 for 2002 (Plaintiffs offset this payment with Eaton's April 2008 check for $1014.00); $30,625.64 for 2003; $30,569.24 for 2006, and $30,625.64 for 2008. (Johnsen Decl. ¶ 28, Docket No. 18; Johnsen Reply Decl. Exs. A-C, Docket No. 33.)

[4] Plaintiffs calculated interest for the period of "9/30/04 to 12/31/05 (455 days) @ 4.50%" and "12/31/04 to 3/31/05 (91 days) @ 5.25%," as well as "1/1/08 to 12/31/08 (365 days) 7.25%" and "4/1/08 to 6/30/08 (91 days) @ 6.0%."  The interest for those time periods will be reduced by $1374.38 and $4937.60, respectively.  The applicable interest rate for "7/1/05 to 9/30/05" is 6.0%, not 6.5%, resulting in $918.77 in interest.

one attempt at settlement, as well as the reduced hourly rate charged by the partner who worked the case. (Johnsen Decl. ¶¶ 39-40, Ex. D, Docket No. 30.) Plaintiffs are also entitled to the amount of the filing fee and payment for service of process as requested, a total of $387.50. (Id.)

### IV. CONCLUSION

For the reasons discussed above, Plaintiffs have established their entitlement to (a) $121,432.16 for Eaton's 2002, 2003, 2006, and 2008 arrears; (b) interest in the amount of $25,618.45; (c) liquidated damages pursuant to 29 U.S.C. § 1132 (g)(2)(C)(ii), also in the amount of $25,618.45; and (d) $10,362.70 in attorneys' fees and costs.

### V. ORDERS

IT HEREBY IS ORDERED that Plaintiffs' motion for summary judgment on the issue of damages (Docket No. 30) is GRANTED as stated above;

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: September 7, 2012
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                              Chief Judge
                                    United States District Judge